IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RANDARL HILD,                          :          No. 4:07-cv-1648
                    Plaintiff,         :
                                       :          (Judge Jones)
          v.                           :
                                       :          (Magistrate Judge Mannion)
MICHAEL J. ASTRUE,                     :
Commissioner of Social Security,       :
                    Defendant          :

## MEMORANDUM

July 28, 2008

This matter is before the Court on the report and recommendation of

Magistrate Judge Malachy E. Mannion (Doc. 13) which recommends that the

plaintiff's appeal from the decision of the Commissioner of Social Security

denying his claim for Supplemental Security Income be denied.  The plaintiff,

Randall Hild, filed objections to the report and recommendation (Doc. 14), and the

Commissioner filed a response thereto (Doc. 15).  Hild was granted leave to file a

reply to the Commissioner's response and did so (Doc. 19).[1]  This matter is now

ripe for the Court's review.  For the reasons set forth below, the Court will adopt

the Magistrate Judge's report and recommendation and deny the plaintiff's appeal.

---

[1] The plaintiff also filed a motion for oral argument.  The Court finds this matter may be decided on the submissions of the parties, and therefore, this motion will be denied.

1

## I.      STANDARD OF REVIEW

### A.      Review of a Magistrate Judge's Report and Recommendation

When, as here, objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or the proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  Under this standard, a court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.      Review of the Commissioner's Denial of Benefits

A district court's review of the Commissioner's denial of benefits, however, is more limited.  The court's role is to "determine whether there is substantial evidence to support the Commissioner's decision."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing *Pierce v. Underwood*, 487 U.S. 552 (1988)).  "It is less than a preponderance of the evidence but more than a mere scintilla." *Jones*, 364 F.3d at 503 (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)).  "Overall, the substantial evidence standard is a deferential standard of review." *Id.* (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

## II.    DISCUSSION

The procedural and factual background of this case are amply set forth in the report and recommendation, and the parties are thoroughly familiar with this history.  Therefore, the Court will address below only the procedural and factual details necessary to address the plaintiff's objections to the report and recommendation.

The plaintiff raises two objections to the Magistrate Judge's report and recommendation:  (1) that the Magistrate Judge erred in holding that the ALJ's finding that the plaintiff's depression is "not severe" was supported by substantial

evidence and (2) that the Magistrate Judge erred in holding that the ALJ properly

considered the evidence presented.  Both objections will be overruled.

> **A.**   **Whether the ALJ's Finding That the Plaintiff's Depression Is "Not Severe" Is Supported by Substantial Evidence**

A five-step evaluation process is used to determine if a claimant meets the

eligibility requirements for disability benefits or SSI.[2]  *See* 20 C.F.R. §§

404.1520(a)-(f), 416.920(a)-(f). At the second step of this sequential process, the

claimant must establish that he has a "severe impairment."  *Id.* at §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  To be "severe," and impairment must

significantly limit the claimant's physical or mental ability to do basic work

activities.  *Id.* at §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).  "Basic

work activities" are "the abilities and aptitudes necessary to do most jobs."  *Id.* at

§§ 404.1521(b), 416.921(b).  Examples of basic work activities include:  (1)

physical functions such as walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking;

---

[2] The same five-step sequential analysis applies to eligibility determinations for disability insurance benefits and supplemental security income. *McCrea v. Comm'r of Social Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

(3) understanding, carrying out, and remembering simple instructions; (4) use of

judgment; (5) responding appropriately to supervision, co-workers and usual work

situations; and (6) dealing with changes in a routine work setting. *Id.*

"The burden placed on an applicant at step two is not an exacting one."

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "[A]n applicant

need only demonstrate something beyond a slight abnormality or a combination of

slight abnormalities which would have no more than a minimal effect on an

individual's ability to work." *Id.* (quoting Social Security Ruling 85-28, 1985 WL

56856, at *3 (Nov. 30, 1984) and citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d

541, 546 (3d Cir. 2003)). Step-two is essentially "a de minimis screening device to

dispose of groundless claims," and therefore, "[a]ny doubt as to whether this

showing has been made is to be resolved in favor of the applicant." *Id.* (citing

*Newell*, 347 F.3d at 546-47). An ALJ's determination that a claimant is not

eligible for benefits at step two, however, is still reviewed under the same

deferential substantial evidence standard. *Id.* at 360-61.

At step two in this case, the ALJ determined that the plaintiff's impairments

consisting of cervical and lumbar disc disease, right carpal tunnel syndrome, a

visual field loss of the left eye, and a bilateral hearing loss were severe

impairments and that his small sliding hiatal hernia was not severe. (Tr. 16-17.) The plaintiff does not challenge these findings.

The ALJ also found that the plaintiff's depression was not a severe impairment. (Tr. 17.) The ALJ based this conclusion on the finding that no evidence indicated that the plaintiff's depression resulted in significant limitations on his ability to perform activities of daily living; maintain social functioning; maintain concentration, persistence, or pace; or extended periods of decompensation. (*Id.*) The ALJ also noted that there was no evidence of a residual disease process that would preclude even a minimal increase in mental damages or changes in environment, such that decompensation would result. (*Id.*) The ALJ further supported his conclusion based on evidence and the plaintiff's own testimony which established that the plaintiff lives alone and is able to care for his own needs and perform a substantial amount of household chores and daily activities. (*Id.*) The ALJ noted that the plaintiff testified that he has no difficulty understanding or carrying out instructions, getting along with others, or going out in public. (*Id.*) Moreover, the ALJ noted that the plaintiff was appropriately responded to all questions put to him with no lapses in concentration or inappropriate behavior. (*Id.*) Finally, the ALJ noted that the plaintiff had never required hospitalization for his depression. (*Id.*) Based on this evidence, the ALJ

6

concluded that the plaintiff's depression does not have more than a minimal impact on his ability to perform basic work activities and therefore is not severe.

The Magistrate Judge found that the ALJ's conclusion was supported by substantial evidence and that the plaintiff had failed to meet his burden of demonstrating that his depression is severe.  (R&R 11-15.)  From the plaintiff's argument  – which consists primarily of citations to *McCrea* and *Newell* repeated *ad nauseum* – it is difficult to discern the precise objection to the report and recommendation  (*See* Doc. 14 at 3-7.)  The Court can distill three possible objections, each of which lacks merit.

First, the plaintiff seems to attribute legal error to the fact that the ALJ (Tr. 15), the Magistrate Judge (R&R 12-13), and the Commissioner (Doc. 11 at 15) each noted that whether the plaintiff's depression is severe is not a case dispositive question because the ALJ concluded the plaintiff suffered from other severe impairments and therefore proceeded through the rest of the five-step analysis. This is a correct statement of the law and constitutes no error.  *See* 20 C.F.R. §§ 404.1523, 416.923; Social Security Ruling 86-8, 1986 WL 68636, at *2 (Nov. 30, 1985).  The plaintiff equates the recitation of this fact with a holding that *McCrea* and *Newell* are inapplicable to this case.  Contrary to the plaintiff's apparent belief, the ALJ's and the Magistrate Judge's recitation of this fact did not result in the

application of a step-two standard that differed in any way from the one set forth in *McCrea* and *Newell*. Both the ALJ and the Magistrate Judge acknowledged the correct standard (Tr. 15; R&R 11-12) and applied this standard in determining that the plaintiff's depression is not severe (Tr. 17) and that this conclusion is supported by substantial evidence (R&R 12-15) respectively. The plaintiff has misread the ALJ's and Magistrate Judge's opinion and made a mountainous argument out of a laregely irrelevant molehill. Any objection on this score is overruled.

Second, the plaintiff appears to object on the grounds that his depression is, in fact, severe as required at step two, implying that the ALJ's conclusion to the contrary is not supported by substantial evidence. On this point, the plaintiff's argues that "[t]he uncontradicted record, which the Commissioner *must* concede, demonstrates that [at] the very least plaintiff has *moderate* impairments related solely to his mental health complaints." (Doc. 14 at 6, emphasis in original.) In his objections, the plaintiff cites to no evidence in support of this argument. In his brief before the Magistrate Judge, the plaintiff argued that the ALJ's conclusion is not supported by substantial evidence because the ALJ afforded only "minimal weight" to the opinion of Dr. Rashid Chaudhry, who assigned the plaintiff a GAF of 50 on one occasion and 60 on another. (Doc. 10 at 20-22.)

GAF is an acronym which refers to an individual's score on the Global

Assessment of Functioning Scale.  *Winters v. Barnhart*, 153 Fed. Appx. 846, 847

n.2 (3d Cir. 2005) (citing American Psychiatric Association, Diagnostic and

Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000)

["DSM-IV-TR"] ).   The scale, which ranges from 1 to 100, is used to report the

"clinician's judgment of the individual's overall level of functioning" in light of his

psychological, social, and occupational limitations.  *Id.*  As the Magistrate Judge

correctly noted, according to the DSM-IV-TR, a GAF score between 51 and 60

indicates "moderate" symptoms or difficulty in social, occupational, or school

functioning, and a GAF score between 41 and 50 indicates "serious" symptoms

and difficulty.  (R&R 13 n.3, 14 n.4.)  The plaintiff presumably relies on these

adjectives in arguing that his depression is at least "moderate" and therefore has

more than a minimal effect on his functioning such that his impairment is "severe"

for purposes of the second step in the eligibility analysis.

Even assuming *arguendo* that the descriptors "moderate" and "severe" can

be so simply transplanted from the context of the DSM-IV to the context of a

disability determination, the ALJ permissibly determined that Dr. Chaudhry's

opinion was entitled to little weight, and the conclusion that the plaintiff's

depression is not severe is otherwise supported by substantial evidence.

9

Although a treating physician's opinions are entitled to great weight when they reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, and may afford a treating physician's opinion more or less weight depending upon the extent of supporting evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). Here, the ALJ was "unable to afford more than minimal weight to the opinion of Dr. Chaudhry" for numerous reasons. (Tr. 21.)  First, the ALJ noted that a GAF score is a subjective scale that only reflects an individual's functioning at a particular moment in time. *See Santiago v. Astrue*, 2008 WL 2571415, at *15-16 (W.D. Pa. June 25, 2008); *Burley v. Barnhart*, 2005 WL 2212363, at *1 (E.D. Pa. Sept. 9, 2005).  Next, the ALJ noted that Dr. Chaudhry's opinion was inconsistent with the rest of the record.  The plaintiff has never been hospitalized due to his depression.  The plaintiff lives alone and performs numerous daily activities and household chores on his own.  The plaintiff testified that he has no difficulty understanding or carrying out instructions, getting along with others, or going out in public, and was able to concentrate and appropriately respond to questions throughout the hearing.  This substantial evidence of the plaintiff's continuing ability to perform basic work activities despite his depression provided the ALJ

10

with a permissible basis on which to reject the opinion of Dr. Chaudhry.

*See Pevarnik v. Comm'r of Soc. Sec.*, 271 Fed. Appx. 221, 223 (3d Cir. 2008).

The ALJ also noted that Dr. Chaudhry's opinion was inconsistent with the opinion

of the State Agency psychiatrist who concluded that the plaintiff's mental

impairment did not result in any work-related limitations.  Further, as the

Magistrate Judge noted, Dr. Chaudhry's own assessments included increasing GAF

scores and noted that the plaintiff was "doing very well" on his medication.  (Tr.

191, 193.)  These inconsistencies provided the ALJ with additional permissible

bases to discount Dr. Chaudhry's opinion.  *See Yensick v. Barnhart*, 245 Fed.

Appx. 176, 182 (3d Cir. 2007).  The ALJ permissibly assigned little weight to Dr.

Chaudhry's opinion, and his conclusion that the plaintiff's depression is a non-

severe impairment is supported by the substantial evidence summarized above.

The plaintiff's objection will therefore be overruled.

Finally, the plaintiff argues that even if the ALJ correctly concluded at step

two that his depression was not, by itself, a severe impairment, the ALJ erred by

failing to consider his depression in conjunction with his other impairments

throughout the rest of the five-step analysis.  This contention is plainly

contradicted by the face of the ALJ's opinion.  The ALJ correctly noted in setting

forth the applicable law that "[i]f a medically severe combination of impairments

exists, the combined impact will be considered throughout the disability determination process, even those that are not severe." (Tr. 15.) As noted above, at step two, the ALJ found that the plaintiff's impairments consisting of cervical and lumbar disc disease, right carpal tunnel syndrome, a visual field loss of the left eye, and a bilateral hearing loss were severe impairments and that his small sliding hiatal hernia and depression were not severe. (*Id.* at 16-17.) At step three, the ALJ found that no impairment or combination of impairments met the criteria set forth in the regulations. (*Id.* at 17-18.) The ALJ specifically noted that "no medical source of record has opined that the claimant's impairments either meet or equal a listed impairment." (*Id.* at 18.) At step four, the ALJ found that the plaintiff retained the residual functional capacity ("RFC") to perform work at the light exertional level with specified limitations. (*Id.*) In making this determination, the ALJ reviewed in detail the plaintiff's self-reported daily activities and found them to be inconsistent with an individual experiencing the claimed debilitating symptoms. (*Id.* at 19.) The ALJ also reviewed in detail the medical evidence presented and concluded that the clinical and objective findings are inconsistent with an individual experiencing disability. (*Id.* at 19-20.) With regard to the plaintiff's depression, the ALJ specifically noted that he "has not required inpatient hospital confinement for an emotional disorder notwithstanding his

complaints of depression; and no medical source of record has noted any signs of psychosis on physical examination." (*Id.* at 20.)  The ALJ also noted that "[d]uring the hearing, the claimant's attention and concentration were not so adversely affected by his alleged pain/symptomatology that he was unable to follow the proceedings or respond appropriately to questions." (*Id.*)  Finally, the ALJ spent a significant portion of the step four analysis addressing the opinion of Dr. Chaudhry and determining that this opinion was entitled to little weight for the reasons stated in detail above. (*Id.* at 20-21.)  In determining the plaintiff's RFC, the ALJ explicitly and repeatedly addressed his depression.  At step five, the ALJ posed questions to the vocational expert using this appropriately determined RFC and considered this RFC and other required factors in determining that, while the plaintiff is unable to perform his past relevant work, jobs exists in significant number that the plaintiff can perform. (*Id.* at 21-23.)  In sum, the ALJ plainly considered the plaintiff's depression throughout the five-step analysis.  The plaintiff's objection in this regard is overruled.

### B.   Whether the ALJ Properly Considered the Evidence in Determining the Plaintiff's RFC

The plaintiff's next objection is the ALJ improperly "cherry picked" evidence instead of considering the whole record in determining his RFC, and that the Magistrate Judge "sidestepped" this issue by providing his own justification for

the ALJ's findings in violation of the *Chenery* doctrine.  *See Fargnoli*, 247 F.3d at

44 n.7.  This objection is without merit.

In determining a claimant's RFC, the ALJ must consider all the medical and

non-medical evidence, weigh the credibility of the evidence, and explain his

conclusions, including the reasons for rejecting certain evidence.  *Id.* at 41; *Burnett*

*v. Comm'r*, 220 F.3d 112, 122 (3d Cir. 2000).  The ALJ plainly did so here.  In

reviewing evidence of the plaintiff's claimed back impairments, the ALJ

referenced the results of a March 2006 physical examination of the plaintiff by Dr.

Pasquariello (Tr. 167-68), an April 2006 x-ray study of the plaintiff's spine by Dr.

Billy (Tr. 171), a May 2006 MRI by Dr. Pasquariello (Tr. 169-70), and a

September 2006 physical examination by Dr. Billy (Tr. 177-80).  In reviewing

evidence of the plaintiff's claimed wrist impairments, the ALJ referenced the

results of an August 2006 electrodiagnostic study (Tr. 181-82) and physical

examination by Dr. Billy (206-07), a September 2006 examination by Dr. Billy

(Tr. 177-78), and a December 2006 examination by Dr. Pasquariello[3] (Tr. 199-

200).  In reviewing evidence of the plaintiff's claimed hearing and vision

impairments, the ALJ referenced a January 2006 report and examination by Dr.

---

[3] The ALJ's opinion mistakenly refers to this examination as performed by Dr. Billy
rather than Dr. Pasquariello.  (*Compare* Tr. 18 *with* Tr. 199.)

Pasquiriello (Tr. 106) and a March 2006 ophthalmologic evaluation (Tr. 133-36). As discussed above, in reviewing evidence of the plaintiff's claimed mental impairments, the ALJ addressed in detail Dr. Chaudhry's opinions and reports. (Tr. 20-21.)  The ALJ also explicitly noted the treatment the plaintiff was undergoing for his reported impairments.  (Tr. 20.)  Further, in conjunction with his review of the medical evidence, and separately in the RFC analysis, the ALJ reviewed the plaintiff's subjective complaints and self-reported activities.  (Tr. 18-20.)

From the face of the ALJ's opinion, it is clear that he adequately considered the totality of the evidence and reviewed the reports and opinions of each treating or consulting physician.  The ALJ properly summarized their findings, noting both evidence which supported the plaintiff's position (*see, e.g.*, Tr. 18 "a subsequent MRI of the lumbar spine in May 2006 revealed evidence of a small broad base disc protrusion...") and evidence which supported a finding that the plaintiff is not disabled (*see, e.g.*, *id.* "a subsequent physical examination by Dr. Billy revealed normal bilateral lower extremity strength").  The ALJ determined, consistent with the referenced medical records and the totality of the evidence, that the record revealed only mild to moderate symptoms inconsistent with a finding of disability. (Tr. 20.)  In reality, the plaintiff's objection is not that the ALJ failed to properly

15

consider the evidence, but that he has drawn the wrong conclusion from the evidence. The ALJ's findings in this case, however, are supported by the substantial evidence noted above, and therefore the inquiry ends, regardless of the different conclusion that the plaintiff or even this Court may draw from the evidence. *Fargnoli*, 247 F.3d at 38.

As to the plaintiff's claim that the Magistrate Judge improperly substituted his analysis for that of the ALJ, the plaintiff fails to cite a single example to support this argument. Instead, the plaintiff analogizes his argument to a situation where "a plaintiff attempts to raise issues or medical impairments that were not raised before the ALJ, or when medical evidence that was not submitted to the ALJ comes into the record at some later date." But the Magistrate Judge here properly reviewed and summarized the evidence *presented to the ALJ* in determining whether the ALJ's findings were supported by substantial evidence. (R&R 4-5, 7-11, 13-15.) The plaintiff confuses what is prohibited by the *Chenery* doctrine, *see SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") – a substitution of a court's reasoning for that of the ALJ – with what is required in order to determine whether the ALJ's reasoning is supported by substantial evidence – a review of the record before the ALJ as

whole, *Schaudeck*, 181 F.3d at 431 ("To determine whether a finding is supported by substantial evidence, we must review the record as a whole.").[4] The Magistrate Judge properly engaged in the latter exercise. The plaintiff's objection is overruled.

## III.   CONCLUSION

For the foregoing reasons, the Court will adopt the report and recommendation of the Magistrate Judge, overrule the objections thereto, and deny the plaintiff's appeal of the Commissioner's determination. An appropriate order will enter.

---

[4] Indeed, had the Magistrate Judge not reviewed the record as a whole in determining whether the ALJ's findings were supported by substantial evidence, the plaintiff undoubtedly would have also charged the Magistrate Judge with "cherry picking" evidence.

17